STATE v. HOMER KEE AND GUS MATTHEWS.

(Filed 21 November, 1923.)

1. **Evidence—Maps—Illustrations—Witnesses—Attorney and Client—Criminal Law—Robbery.**

A witness may illustrate his testimony as to objects and their relative position material to the inquiry, by a map made by another than himself, when he testifies to the accuracy of the map in relation to his evidence, and directly of matters within his own knowledge, and the map is confined to this purpose and excluded as substantive evidence; and an attorney under a like restriction may in like manner illustrate his argument by drawing a diagram on the floor before the jury.

2. **Evidence—Indictment—Witnesses—Endorsements—Criminal Law.**

Where two bills of indictment have been drawn for the same offense at different terms, and one of them has been ignored by the grand jury, but the other returned "a true bill," it was competent for the State to show by endorsement on the indictment being tried that the names of additional witnesses appeared thereon.

APPEAL by defendant from *Finley, J.,* at April Term, 1923, of GUILFORD.

Criminal action. The first count ·in the indictment charged the defendants with the larceny of money, the property of the Bank of Sum-

merfield, and the second count with receiving the money knowing it to have been stolen. There was a general verdict of guilty, and from the judgment the defendant Matthews appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Bennett & Porter and E. Garland Brown for the appellant.*

ADAMS, J. About eleven o'clock in the forenoon of 29 May, 1922, a young man who was unknown to the occupants entered the business apartment of the Bank of Summerfield, holding in his hand a "blue steel pistol with a six-inch barrel of .38 caliber." After trying in vain to lock the cashier and a director in the vault he retired from the bank with bills amounting to sixteen hundred and fourteen dollars. In November or December he was imprisoned in the jail of Rockingham County and was there identified as the defendant Kee.

Both defendants lived in High Point within a hundred yards of each other and were not unacquainted. About two hours before the larceny occurred they were seen together near Summerfield in an Oldsmobile owned by Matthews. They were then on the Hillsboro road, which at a short distance from the village intersects with the road from Greensboro. After overtaking or meeting two witnesses by whom they were identified, the defendants separated. One got out of the car and went towards Summerfield; the other turned the car around but finally arrived at the same destination by another route. Upon his arrival there Kee tarried a short while near a warehouse and afterwards went to a lumber pile from which he had an unobstructed view of the bank. When he entered the building he went from this pile of lumber and passed by it in making his escape after the larceny was committed. There were several circumstances tending to show that he and Matthews were acting in concert and that the raid on the bank was the result of their criminal conspiracy. There was evidence to the contrary, but the exceptions do not require its recital.

The conduct of the defendants in approaching the village and their whereabouts after arriving there were momentous to the prosecution, and, for the purpose of showing the relative situation of several objects, resort was had to maps or diagrams which were used to illustrate the testimony of certain witnesses. It is argued by the appellant that the opposing attorneys prepared a diagram which was used by a witness during his examination, and that it should have been prepared by the witness himself. But the witness said that he knew where the various objects were situated and that "the map is a pretty fair representation" of them. Moreover, his Honor carefully restricted the testimony to the situation of objects of which the witness had personal knowledge, and

emphasized the ruling that the diagram was not substantive evidence but used only for the purpose of illustration. In the admission of this evidence there was no error. *S. v. Whiteacre,* 98 N. C., 753; *Dobson v. Whisenhant,* 101 N. C., 646; *Burwell v. Sneed,* 104 N. C., 118; *Riddle v. Germanton,* 117 N. C., 388; *Andrews v. Jones,* 122 N. C., 666; *S. v. Harrison,* 145 N. C., 408. In *S. v. Rogers,* 168 N. C., 114, the witness testified that the map used was "approximately correct," and the court said, "It could hardly have been otherwise, being made at the time and merely to illustrate his evidence. This did not render the map incompetent as a part of his testimony, for the defendant doubtless made the most of it by arguing that therefore his whole testimony was only approximately correct."

During his argument one of the attorneys for the prosecution drew a diagram on the floor. The court permitted its use only for the purpose of illustrating the State's contentions as to the location of the premises, and in doing so respected the principle maintained in the decisions which have just been cited. His Honor held expressly that the diagram was not evidence. The objection to this testimony is therefore without merit.

There is one other exception. At different terms two bills of indictment, charging the defendant Matthews with the offense of which he was convicted, were sent to the grand jury. The first was ignored; the second was returned "a true bill." On the cross-examination of a witness for the State the defendant proved the return of the first bill and the discharge of the defendant. The State on the redirect examination was allowed to show, not what took place in the grand jury room or what any member of the grand jury said, but merely that on the second bill were endorsed the names of additional witnesses. We see no sufficient cause for holding that this evidence was incompetent.

The record is free from reversible error. Let this be certified.

No error.