MRS. JESSE WELCH v. INDEPENDENT COACH LINE, INC.

(Filed 18 December, 1929.)

1. **Evidence K b—Expert witness may testify as to what X-ray pictures revealed in respect to the injury.**

    Where an expert witness testifies that he had examined X-ray pictures of the injury, taken under his supervision, and that he had later lost them, it is competent for him to testify from memory as to what the pictures disclosed in regard to the injury in corroboration of his previous testimony as to what he had discovered upon his examination of the injury, and the admission of such testimony is not an admission of the X-ray pictures as substantive evidence, and an objection thereto on this ground cannot be sustained.

2. **Highways B c—Instruction as to legal speed on highway held not erroneous under the evidence in this case.**

    On appeal an instruction of the trial court to the jury will be considered with the evidence in the case, and an instruction that it is negligence as a matter of law for a person to drive a car on the highway at such rate of

speed that the car cannot be stopped within the distance which the driver is able to see an object on the highway in front of him, is not held erroneous where the evidence discloses that the driver could have seen the wagon, which he hit, at a distance of one thousand feet.

APPEAL by defendant from *Harwood, J.*, at May Term, 1929, of HAYWOOD. No error.

The plaintiff sued to recover damages for personal injuries caused by the collision of the bus in which she was traveling as a passenger with a wagon standing at a side of the highway. The wagon was loaded with poles which, as a result of the impact, broke the windshield and injured the plaintiff. The two issues of negligence and damages were answered in favor of the plaintiff, and from the judgment awarded upon the verdict the defendant appealed, assigning error.

*Morgan, Ward & Stamey for plaintiff.*
*Thomas S. Rollins, Jr., for defendant.*

PER CURIAM. The plaintiff's first witness was a dentist, who testified minutely concerning her injuries. The witness then said that under his supervision X-ray pictures had been made of the injury in her mouth, and that he had examined the pictures and had lost them. His testimony as to what the pictures revealed was admitted, subject to the defendant's exception, in corroboration of what he had previously testified to as discovered in his examination. It is contended by the appellant that this ruling was in effect the admission of the X-ray pictures as substantive evidence. We think not. If the pictures had been in the hands of the witness they would have been subject to explanation, and the fact that they had been lost and were not available would not as a matter of law exclude an explanation based upon the memory of the witness as to what the pictures disclosed. It is nowhere intimated that they were admitted as substantive evidence. *Honeycult v. Brick Co.,* 196 N. C., 556. It is the common practice to receive maps, diagrams, photographs, and pictures for the purpose of giving a representation of objects and places which generally cannot be conveniently described by witnesses. Especially is this true of X-ray pictures which usually require an explanation by parol.

The appellant excepted to the following instruction: "It is negligence, as a matter of law, for a person to drive an automobile on a traveled public highway used by vehicles and pedestrians at such rate of speed that such automobile cannot be stopped within the distance which the operator of said car is able to see an object on the highway in front of him, and that same rule applies to persons operating a bus on the highway."

A similar instruction was approved in *Nikoleropoulos v. Ramsey,* 214 Pac., 304, which is cited in *Weston v. R. R.,* 194 N. C., 210. In the latter case the principle, while not disapproved, was not strictly applied. But the instruction given in the case before us must be considered in its application to the evidence; and when so applied it must be sustained. There is evidence tending to show that the wagon could have been seen by the driver of the bus at a distance of one thousand feet, although the rays of the sun were directly in the driver's face. The driver testified that he was familiar with the road; that it was two or three hundred yards from the curve to the place of the collision, and that he was not blinded until he "got right on the wagon." Considered in its application to the evidence, there was no error in the instruction.